**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CESAR ANDUJAR,

                       Plaintiff,

    v.                                                  No. 09-CV-489
                                                         (NAM/DRH)

BRIAN FISCHER, Commissioner of New
York State Department of Corrections; and
MELVIN WILLIAMS, Superintendent of
Willard Drug Treatment Center,

                       Defendants.

---

**APPEARANCES:**                            **OF COUNSEL:**

CESAR ANDUJAR
08-A-6417
Plaintiff Pro Se
Washington Correctional Facility
Post Office Box 180
72 Lock 11 Lane
Comstock, New York 12821

HON. ANDREW M. CUOMO            JAMES SEAMAN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Cesar Andujar ("Andujar"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

U.S.C. § 1983 alleging that defendants, the DOCS Commissioner and a DOCS employee, violated his constitutional rights under the Fourteenth Amendment.  Compl. (Dkt. No. 1). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 16.  Andujar opposes the motion and also requests permission to amend his complaint to add DOCS as a defendant. Dkt. No. 19.  For the following reasons, it is recommended that defendants' motion to dismiss be granted and that Andujar's motion be denied.

## I. Background

The facts are related herein in the light most favorable to Andujar as the non-moving party.  See subsection II(A) infra.

On March 3, 2006, Andujar was sentenced by a Rensselaer County Supreme Court judge to a determinate term of three years, to be served as parole supervision, given that Andujar successfully complete a drug treatment program at DOCS Willard Drug Treatment Facility ("Willard"), plus two years of post-release supervision.  Compl. at 7.  Thereafter, Andujar was transferred to Ulster Correctional Facility on March 13, 2006 and subsequently to Willard on April 18, 2006.  Id.

Andujar then filed a petition for a writ for habeas corpus alleging that he should have been transferred from Ulster to Willard within ten days, as prescribed by New York law.[2] Compl. at 7.  The petition was granted, stating that Andujar should have arrived at Willard

---

[2] Under state law, "[p]rovided, however, if the court directs that the sentence be executed as a sentence of parole supervision, it shall remand the defendant for immediate delivery to a reception center . . . for a period not to exceed ten days." N.Y. CPL § 410.91(1).

no later than March 23, 2006 and that since he was not transferred until April, Andujar was improperly held at Ulster for twenty-five days. Id. at 4, 8. Facility personnel asserted that the delay resulted from a lack of vacancies in the drug treatment program, indicating that Andujar was transferred as soon as practicable. Id. at 8. The court rejected defendants' contentions and on May 9, 2006, ordered Andujar "released and restored to community-based parole supervision . . . ." Id. at 9. This action followed.

## II.  Discussion

In his complaint, Andujar alleges that his Due Process rights were violated when, in contravention of state law, he was incarcerated for an extra twenty five days in Ulster before being transferred to his court-ordered drug treatment program at Willard. Defendants move to dismiss on the grounds that (1) Andujar's due process and negligence claims are meritless, (2) recovery for emotional distress is barred because Andujar did not suffer any physical injuries, and (3) defendants are protected by qualified immunity.

### A. Legal Standard[3]

Rule 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the

---

[3] Generally, consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). As the habeas corpus decision was attached to the complaint, it too has been considered. Defendants attached the decision with their motion papers to assist the court with pagination references. For consistency, the undersigned has used the pagination provided by the CM/ECF headers in this decision, and not that provided by the defendants.

3

complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the

4

>     strongest arguments that they 'suggest. . . . .  At the same time, our cases
>     have also indicated that we cannot read into pro se submissions claims that
>     are not "consistent" with the pro se litigant's allegations, . . or arguments that
>     the submissions themselves do not "suggest, . . ." that we should not "excuse
>     frivolous or vexatious filings by pro se litigants" . . . and that pro se status
>     "does not exempt a party from compliance with relevant rules of procedural
>     and substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Due Process

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV §1.  It is important to emphasize that due process "does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished without due process of the law."  Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).

In this case, Andujar claims that his imprisonment for twenty-five days, resulting from defendants violation of the time for transfer prescribed in New York State Criminal Procedure Law, constituted a deprivation of his due process rights.  This argument is flawed for a few reasons.  First, "[a] violation of state law neither gives [Andujar] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."  Doe v. Conn. Dept. of Child & Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990) (internal quotation marks and citations omitted); see also Patterson v. Coughlin, 761 F.2d 886, 891 (2d Cir.

5

1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 . . . ."); Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.") (internal quotation marks and citations omitted).

Second, "[a]mple precedent establishes that a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution," as procedural rights are designed to "protect a substantive interest to which the individual has a legitimate claim of entitlement." Watson v. City of New York, 92 F.3d 31, 37-38 (2d Cir.1996) (citations omitted). Thus, despite the "explicitly mandatory language" utilized in the state statute requiring Andujar to be transferred from a receiving facility to Willard within ten days, which would have compelled the finding of a liberty interest under pre-Sandin due process analysis, the current state of the law asks the undersigned to determine what "the true liberty interest at stake . . .," is and whether it was accorded proper protections. Id. at 37-38.

Federal case law firmly establishes that "[t]he claim to a constitutional right to treatment for narcotics addiction has no basis in either the provisions of the Constitution or the decisions of the courts . . . ." Smith v. Follette, 445 F.2d 955, 961 (2d Cir. 1971). However, in this case, Andujar is not contending that he had a constitutional right to attend Willard, but that defendants' actions in failing to transfer him to Willard within the ten day statutory mandate extended his incarceration accordingly. Thus, Andujar claims that defendants extended his incarceration in DOCS by twenty-five days.

Clearly, an individual has a right to be free from unnecessary incarceration. "Although the plaintiff may have been confined too long, the United States Supreme Court has held that the Constitution does not protect against wrongful detention caused by a State actor's mistake or inadvertence in carrying out his or her duties." Williams v. Coughlin, No. 91-CV-83E (M), 1993 WL 481392, at *3 (W.D.N.Y. Nov. 17, 1993) (citing Baker v. McCollan, 443 U.S. 137 (1979) (holding that an innocent man who was mistakenly identified, arrested, and incarcerated for eight days was not deprived any due process rights because the detention occurred pursuant to a valid warrant and bona fide mistake ). In Williams, a prisoner was inadvertently confined for an extra twenty days in segregation despite receiving a constitutionally sound disciplinary hearing. Id. Following Baker, the Williams court found no constitutional deprivation

> where the alleged mistake resulted in only a slightly prolonged restrictive confinement of a convicted felon whose liberty was already severely restrained by his being imprisoned[, in] contrast [to] the mistake in Baker . . . [where] a far more severe deprivation of liberty [occurred] in that an innocent person has to endure eight days in jail.

Id.

This case presents a situation comparable to those in Baker and Williams. In this case, Andujar was sentenced and awaiting transfer from Ulster to another DOCS detention facility. His release to parole supervision was contingent upon successful completion of his subsequent treatment at the DOCS facility. Thus, Andujar's position differed from that in Baker where the plaintiff was truly innocent of any wrongdoing. In Williams the plaintiff was incarcerated and complained of the location of his incarceration while Andujar complains of an extension of his incarceration.

Defendants here were attempting to transfer Andujar to the treatment facility but had to wait for an appropriate vacancy to appear before the transfer could occur. Despite the factual differences in the cases, defendants here were acting similarly to those defendants th Baker and Williams since they were detaining Andujar pursuant to a valid sentencing order until he could be transferred to complete the conditional requirement standing between his incarceration and release.  The failure to comply with the New York State Criminal Procedural requirement was an inadvertent mistake and result of a situation which was beyond anyone's control.

This is further supported by the attached habeas petition which admonished DOCS for its poor organizational skills and ability to discharge patients appropriately from Willard and usher in the next wave of individuals requiring treatment pursuant to county court sentences.  Compl. at 8.  While the opinion is scathing, it fails to allege anything more than a negligent failure of the individuals at DOCS to perform their duties in a better fashion as their "conduct made the Willard programming component untenable." Id.   Additionally, there is no language in the complaint indicating with facial plausibility that such actions by the defendants were intentional. Accordingly, defendants' negligent failure to comply with the ten-day rule is insufficient to allege the requisite culpability for an actionable § 1983 claim.  See generally Daniels v. Williams, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.").

Accordingly, defendants' motion to dismiss should be granted.

### C. Damages for Emotional Distress

Pursuant to the Prisoner Litigation Reform Act of 1995 ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Because Andujar has failed to allege that he has suffered any concomitant physical injury, it appears he is precluded from recovering any type of compensatory damages related to emotional distress. Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999) ("[I]n the case of suits seeking damages for mental or emotional injuries . . . a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [and make a prior showing of a physical injury]."). However, Andujar was not confined at the time the suit was filed in 2009, he was released on parole, thus the statutory language of §1997e(e) is inapplicable. See Kelsey v. County of Schoharie, No. 04-CV-299, 2005 WL 1972557, at *3 (N.D.N.Y. Aug. 05, 2005) ("[B]ecause plaintiffs were not incarcerated at the time this action was commenced, § 1997e(e) is inapplicable . . . .") (citing Kerr v. Puckett, 138 F.3d 321, 322 (7th Cir. 1998) (holding that a parolee "is not a person incarcerated or detained," thus the provisions of §1997e are irrelevant) (internal quotations and citations omitted)).

Therefore, defendants' motion to dismiss on this ground should be denied.

### D. Qualified Immunity

Defendants claim that even if Andujar's constitutional claims are substantiated, they are entitled to qualified immunity. Qualified immunity generally protects governmental officials

9

from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning Andujar's claims because, as discussed supra, accepting all of Andujar's allegations as true, he has not shown that any of defendants violated his constitutional rights.

Even if it could be said that Andujar's rights were violated by the extra twenty-five days of detention, qualified immunity would still protect defendants.  The plain language of the Fourteenth Amendment guarantees an individual freedom from incarceration without due process.  However, the Second Circuit has yet to address a case which contemplates whether a due process violation occurred when an individual is subject to continued

confinement in DOCS custody, beyond a state mandated deadline, because DOCS officials did not have adequate space at a drug treatment facility which the individual was court-ordered to complete prior to release on parole. Andujar was "sentence[d to a term] of parole supervision *on the condition that he enter and complete the Willard Drug Treatment Program . . . .*" Compl. at 7 (emphasis added). Thus, Andujar's release was conditional upon his completion of the DOCS-administered drug treatment program. Holding him in Ulster, the DOCS receiving facility, for an additional three weeks until there was a vacancy at Willard was a reasonable course of action to take since Andujar's release from confinement was contingent upon his successful completion of the Willard program.

Accordingly, in the alternative, defendants' motion should be ground on this ground.

### E. Andujar's Motion to Amend

Rule 15(a) provides that a court should grant leave to amend "freely ... when justice so requires." When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. Evans v. Syracuse City School District, 704 F.2d 44, 46 (2d Cir. 1983) (citing Foman, 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d

11

Cir. 1993)(citations omitted).

In this case, granting Anjudar's request to amend his complaint to add DOCS as a defendants is futile under the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

"Agencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing Halderman, 465 U.S. at 100). Thus, any potential claims Andujar can assert against DOCS are barred by application of the Eleventh Amendment. Additionally, "this court has held that DOCS is not a 'person' under § 1983 [and c]onsequently, because defendant DOCS is immune from suit under the Eleventh Amendment[,] defendants' motion to dismiss plaintiff's claims against DOCS must be granted." Boddie v. New York State Dep't of Corr. Serv., No. 96-CV-3291 (HB),1997 WL

482036, at *1 (S.D.N.Y. Aug. 20, 1997) (internal citations omitted).

Moreover, in the case of proposed amendments where new defendants are to be added, the Court must also look to Fed. R. Civ. P. 21. Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just." Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." United States v. Commercial Bank of N.A., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations omitted). Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15. Fair Housing Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).

As previously stated, DOCS defendants are neither a necessary or desirable party as all claims against them are futile. Thus, as the liberal standard of Rule 15 precludes the addition of DOCS as a defendant, so does Rule 21. Accordingly, Andujar's motion to amend is denied on this ground.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 16) be **GRANTED** and that the complaint be **DISMISSED** as to all claims and all defendants; and

**IT IS ORDERED** that Andujar's motion to amend the complaint (Dkt. No. 19) is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 12, 2010
       Albany, New York

                                                            David R. Homer
                                               United States Magistrate Judge